CAMPEAU GOODSELL SMITH, L.C.
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California 95112
Telephone: (408) 295-9555
Facsimile: (408) 295-6606

ATTORNEYS FOR
The Saunders Company

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No.: 12-55134 |
| LOUIS CHARLES ROCHA, | CHAPTER 13 |
| Debtors. | **OBJECTION TO CHAPTER 13 PLAN** |
| | Date: September 12, 2012 |
| | Location: 1:55 p.m. |
| | United States Bankruptcy Court, Rm. 3070 |
| | 280 South 1st St. |
| | San Jose, CA 95113 |
| | Judge: Honorable Charles Novack |

The Saunders Company ("TSC"), secured creditor, submits this Objection To Chapter 13 Plan to object to the Chapter 13 Plan filed by Debtor Louis Charles Rocha ("Debtor") (Docket#23) as follows:

**I. Introduction And Background.**

    **A.    Debtor's Relationship To The Saunders Company.**

On November 20, 2007 TSC, as lender, and Debtor Louisa C. Rocha[1] (Debtor) and Gwen S. Rocha, husband and wife as joint tenants, as borrowers, entered into a Note Secured By Deed of Trust Straight Note whereby TSC loaned the borrowers $525,000 at 10.5 percent interest with

---

[1] A.k.a. Louis C. Rocha.

payments of $4,593.75 due on the 1st of the month beginning on January 1, 2008 and continuing through December 1, 2010[2] at which time the unpaid balance, including principal and interest, become due and payable ("Promissory Note").

The Promissory Note was secured by a Deed of Trust And Assignment of Rents recorded with the Monterey County Recorder on November 29, 2007 (Document#2007089381)("Deed of Trust") relative to 109 Pearl Street, King City, CA (A.P.N. 026-241-002), 304 & 306 S. First Street, King City, CA (A.P.N. 026-241-008), 107 Pearl Street, King City, CA (A.P.N. 026-241-009), and 324 S. First Street, King City, CA (A.P.N. 026-242-001) (jointly "Real Property"). The Deed of Trust required, among other things, for the borrowers to maintain the property(ies), maintain insurance, and pay property taxes.

Debtor did not and does not reside at any of the properties that make up the Real Property.

**B.      Debtor's First Bankruptcy[3].**

On September 23, 2011, Debtor's first Chapter 13 Bankruptcy, In re Louis Rocha, U.S.B.C (ND CA) #11-58862, was filed ("First Bankruptcy"). The First Bankruptcy did not include any reference to TSC, including on the Creditor Matrix. The First Bankruptcy was dismissed on October 19, 2011 for Debtor's failure to file schedules and failure to comply with the court's order to file schedules.

TSC was not aware of the First Bankruptcy until after the belated notice of the Second Bankruptcy (defined below).

**C.      Foreclosure on The Real Property and Deed of Trust and Recording of Trustee's Deeds.**

---

[2] On December 1, 2009 and on December 1, 2010, Modification of Note Agreements were entered into whereby, among other things, the interest rate was reduced to 7.0 percent and the maturity date was extended to December 1, 2012.
[3] The court may take judicial notice of the Debtor's bankruptcy filings (Fed.Rule.Evid. 201).

OBJECTION TO CHAPTER 13 PLAN
2
Case: 12-55134   Doc# 28   Filed: 08/28/12   Entered: 08/28/12 18:15:16   Page 2 of 7

Subsequent to Debtor's First Bankruptcy and prior to his Second Bankruptcy Debtor did not pay property taxes, required insurance, and the mortgage debt owed to TSC and failed to maintain the Real Property, while collecting and not turning over rents from the tenants of the Real Property.

On March 8, 2012, a Notice of Default was recorded (Document#2012014323). On June 18, 2012 a Notice of Trustee Sale was recorded (Document# 2012035299) calling for a balance owed, as of June 18, 2012, of $550,678.17.

On July 11, 2012, TSC foreclosed on three of the four properties and three Trustee's Deeds recorded on July 11, 2012 (Document#2012040201 for 324 S. First Street, King City, CA (A.P.N. 026-242-001), Document# 2012040202 for 109 Pearl Street, King City, CA (A.P.N. 026-241-002), and 2012040203 for 107 Pearl Street, King City, CA (A.P.N. 026-241-009)). TSC did not proceed to sale on 304 & 306 S. First Street, King City, CA (A.P.N. 026-241-008). The balance owed on the Promissory Note and Deed of Trust, after deducting the credit bids by TSC, was, as of July 11, 2012, approximately $74,326.92 ($549,326.92 owed on July 11, 2012 less credit bids totaling $475,000). TSC submits that as of the date of the trustee's sale and/or the petition date the real properties that made up the Real Property did not have a combined value equaling the balance owed and none of the properties had a value exceeding the respective credit bid.

TSC understands that at or about July 11, 2012, the outstanding real and personal property taxes on the Real Property was at least $7,888.38 ($3,724.49 on 109 Pearl Street, $1,225.42 on 304 & 306 S. First Street, $0.00 on 107 Pearl Street[4], and $2,938.47 on 324 S. First Street).

On and after July 11, 2012, TSC, with respect to some of the Real Property, collected rents, paid insurance, and incurred maintenance expenses. For example, The Saunders Company paid and continues to pay insurance ($1,268.31 through August 23, 2012) and repairs and maintenance ($2,5000 through August 23, 2012) and collected rent (or portions of rent) ($2,880.00 through August 27, 2012).

---

[4]The Saunders Company understands these property taxes were paid by a Chase.

OBJECTION TO CHAPTER 13 PLAN

Case: 12-55134    Doc# 28    Filed: 08/28/12    Entered: 08/28/12 18:15:16    Page 3 of 7

On July 17, 2012, TSC served tenants at the Real Property 90 day notices to vacate. On August 1, 2012, TSC entered into rental agreements with these tenants of the Real Property.

On August 13, 2012, TSC commenced Unlawful Detainer actions against the Debtor and Gwen S. Rocha with respect to two of the properties because Debtor and/or Gwen S. Rocha had abandoned personal property (not appearing in Debtor's schedules) on the properties (Monterey County Superior Court Case No.: M119251 relating to 107 Pearl Street, King City, Ca (A.P.N. 026-241-009) and Case No.: M119252 relating to 324 S. 1st Street, King City, CA (A.P.N. 026-242-001). On August 16, 2012, Debtor, and Gwen S. Rocha, was served with the Unlawful Detainer actions by sub-service. On or about August 20, 2012, Debtor, and Gwen S. Rocha, field answers to the two Unlawful Detainer actions admitting the alleged facts and asserting (jointly) a single affirmative defense "Filed Bankruptcy Chapter 13 before plaintiff began there claim." (sic)

**D.     Second Bankruptcy-Belated Notice To TSC And Omissions From Schedules[5].**

On July 10, 2012, Debtor commenced this second Chapter 13 bankruptcy ("Second Bankruptcy").

Debtor's Second Bankruptcy, like his First Bankruptcy, was filed in pro per, was filed without any schedules, was filed without any reference to TSC (or anything associated with TSC), and was filed without notice to TSC.

On August 6, 2012, Debtor filed an amendment to his Creditor Matrix adding The Saunders Company. On August 17, 2012, TSC received notice of Debtor's Chapter 13 Bankruptcy via certified mail.

On August 23, 2012, Debtor filed his schedules, Creditor Matrix, and Chapter 13 Plan none of which make any reference to TSC, the Promissory Note, the Deed of Trust, the Real Property, the Trustee's Deeds, and/or the Unlawful Detainer actions.

**E. The stay terminated on August 9, 2012.**

Pursuant to 11 U.S.C. 362 (c)(3)(A) the stay terminated on August 9, 2012.

---

[5]The court may take judicial notice of the Debtor's bankruptcy filings (Fed.Rule.Evid. 201).

**F. TSC's Motion For Relief From Stay Is Scheduled For September 12, 2012.**

On August 28, 2012, TSC filed and served a Notice of Motion for Relief from Automatic Stay Nunc Pro Tunc; Annulling the Stay Nunc Pro Tunc; and Confirming No Stay ("Motion For Relief From Stay") which is scheduled for a hearing on September 12, 2012 at 3:00 p.m. TSC submits this Motion For Relief From Stay may have a substantial impact on Debtor's Chapter 13 Plan and confirmation.

**II. Argument.**

The provisions of 11 U.S.C. 1325 determine when a plan can be confirmed by the court. Debtors' plan fails Section 1325 and cannot be confirmed.

**A. The Plan Has Not Been Proposed In Good Faith As Required By 11 U.S.C. §1325(a)(3).**

Debtor's Chapter 13 Plan has been not been submitted in good faith and appears to be submitted for the purpose of hindering, defrauding or delaying their creditors or at least confuses them. TSC cites the chronology listed hereinabove and cites the following additional examples:

**1. Failure To Secure Credit Counseling.**

The Debtor has failed to file a Certification regarding Credit Counseling. The Debtor has market the box on Exhibit D to the Petition claiming that exigent circumstances prevented him from obtaining the credit counseling certificate within the 180 day period prior to filing, however, the Debtor has not obtained an order excusing him from the requirement.

In addition, Debtor's First Bankruptcy does not reflect the filing of any Certification regarding Creditor Counseling.

Therefore, it appears that the requirement was not met.

**2. Failure To File Required Schedules.**

Although this is Debtor's second bankruptcy in the last year, his First Bankruptcy was dismissed for failure to file schedules and comply with a related court order, in the Second Bankruptcy Debtor filed an application for an extension of time to file schedules, secured a related order, filed some schedules on August 23, 2012, but Debtor did not, in addition to providing

OBJECTION TO CHAPTER 13 PLAN
5
Case: 12-55134   Doc# 28   Filed: 08/28/12   Entered: 08/28/12 18:15:16   Page 5 of 7

complete and accurate information, file a Statement of Financial Affairs. TSC submits other schedules may be outstanding notwithstanding the court's order for all required schedules to be filed by August 23, 2012.

**3. Debtor Second Bankruptcy Exceeds Applicable Chapter 13 Jurisdictional Limits.**

Debtor's bankruptcy must be dismissed as Debtor's secured debt exceeds the debt limitations of 11 U.S.C. 109.

Debtor's Summary of Schedules and Schedule D, albeit incomplete, indicate $1,078,000.00 in secured debt. However, Debtor appears to have omitted all the debt associated with the Real Property described hereinabove which as of July 10, 2012 was approximately $549,326.92 as to TSC and outstanding real and personal property taxes on the Real Property of at least $7,888.38 ($3,724.49 on 109 Pearl Street, $1,225.42 on 304 & 306 S. First Street, $0.00 on 107 Pearl Street[6], and $2,938.47 on 324 S. First Street).

Further, TSC's records indicated that at the time the Promissory Note and Deed of Trust were issued that TSC held first positions on all the properties, except for 304 & 306 S. First Street where TSC held a second position behind Washington Mutual (transferred to Chase) in the amount of $217,000. TSC understands that Chase believes that its deed of trust may relate to 107 Pearl Street, as a result has apparently been paying property taxes on said property, and a Trustee's Deed was recorded by California Reconveyance Company relative to 107 Pearl Street and states, in part, that Wells Fargo Bank, N.A., as trustee for WaMu Pass-Through Certificates Series 2006-PR2 Trust foreclosed on its deed of trust with a balance owed of $267,229.64 and with an opening bid by the grantee of $66,984.00–on or about August 6, 2012.

**4. The Plan Does Not Provide For TSC Or Any Debt Related To The Real Property.**

The Plan does not provide for TSC, which holds/held deeds of trust on the Real Property, or any of the debt, TSC, property taxes, and/or any other secured creditor asserts against the Real Property, i.e. Washington Mutual, Chase, and/or Wells Fargo Bank.

---

[6]The Saunders Company understands these property taxes were paid by a Chase.

**5. Debtor's Plan, Which Is Premised On Debtor's Income, Does Not Address The Income and Expenses Associate With The Real Property.**

The Plan does not address the income and expenses associated with the Real Property and/or TSC, which holds/held deeds of trust on the Real Property, or any of the debt, TSC, property taxes, and/or any other secured creditor asserts against in the Real Property, i.e. Washington Mutual, Chase, and/or Wells Fargo Bank.

**6. The Debtor's Plan Does Not Appear To Address Debtor's Disposable Income.**

Debtor's Schedule J suggest Debtor has $5,972 in monthly disposable income–after payment of debt and expenses. This may be inconsistent with Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ($25.00 monthly disposable income).

These totals appear unworkable relative to Debtor's Chapter 13 Plan which purports to pay $4,175.00 to the Chapter 13 Trustee after Debtor's pays the listed secured creditors some unclear amount of "Adequate Protection Payments"

**7. Debtor's Schedule B Appears To Omit Reference To Personal Property Abandoned At The Real Property.**

The Unlawful Detainer actions filed by TSC against the Debtor (and his spouse) described hereinabove specifically identify assets (two large shipping containers), but these assets do not appear to be identified in Debtor's Schedule B.

**B. Reservation of Further Objections And Incorporation of Objections Asserted By Others.**

TSC reserves its right to supplement this objection if or when additional information is known and incorporates any and all objections asserted by other creditors and the Chapter 13 Trustee.

**VI. Conclusion.**

WHEREFORE, creditor submits the Debtor's Chapter 13 Plan must be denied and substantially amended.

Dated: August 28, 2012                 CAMPEAU GOODSELL SMITH
                                                      By: /s William J. Healy
                                                          William J. Healy